## VINCENT v. ALDEN.

(Supreme Court, Appellate Division, Third Department. November 21, 1899.)

1. MASTER AND SERVANT—INJURY TO SERVANT—ABSENCE OF CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

In an action for injuries to a servant, it is incumbent on him to prove that he was free from contributory negligence, which he may do either by direct testimony of acts showing care, or by circumstantial evidence from which a lack of contributory negligence may be inferred.

2. SAME—EVIDENCE.

Girders were being unloaded from a car by raising them slightly with chains, and sliding them over the girders underneath, and lowering them down the side of the car. Plaintiff's duty was to place a crowbar under a shoe or projection on the under side of the girder being raised, so that the crowbar at the same time rested on a like projection on the girder underneath the one being raised, in order that such projections would not catch; but instead of placing the crowbar so that both ends were solid, as he knew was necessary, he placed the bar between the projections, and was holding one end, when a chain broke, and he was injured by the bar. Held, that such facts did not show that plaintiff was free from contributory negligence.

Parker, P. J., dissenting.

Appeal from trial term, Clinton county.

Action for injuries by Thomas Vincent against John F. Alden. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Botsford & Cotter (T. B. Cotter, of counsel), for appellant.

Shedden & Kellogg (L. L. Shedden, of counsel), for respondent.

HERRICK, J. In cases of this character, it is incumbent upon the plaintiff to affirmatively establish the lack of contributory negligence upon his part. This may be done by direct testimony of acts showing care and caution, or of acts and precautions taken to prevent accident or injury, or by proof of circumstances from which the jury may infer a lack of contributory negligence. In

this case, after a very careful examination of the evidence, I fail to find that the plaintiff has met this requirement by either kind of evidence. On the contrary, if the evidence points in either direction, it is rather to negligence on his part than to its absence. At the time of the happening of the accident, the plaintiff was engaged in assisting to unload steel girders from a platform car. These girders were over 54 feet in length, and of great weight. Several of them were loaded upon the car, one upon the top of the other. upon one side of each girder was what is called a "shoe," some 20 inches in width, which slightly projects beyond the side of the girder itself. As these girders rested upon each other on the car, the shoe of the one was in an opposite direction from the shoe of the other, so that in removing them from the car there was danger of these shoes coming in contact, and thus prevent one passing over the other. Chains were attached to each end of the girder to be removed, by which to drop it over the side of the car, the girder being "pinched" or "jollied" along, to use an expression of the plaintiff, until by its own weight it slid over the side of the car, and down upon the foundation upon which it was to rest; the chain being intended to ease it down slowly and gradually, instead of permitting it to drop of its own weight as it left the car. The plaintiff was engaged with a crowbar in preventing the shoe plate of the girder being removed from coming into contact with the shoe plate of the girder still on the car, and upon which it had been previously resting. The superintendent of the defendant, a man named Merrill, according to the testimony of the plaintiff, instructed him "to get a bar, and go to the shoe, and not let it catch at the west end. I put the bar over the shoe, on the lower one and under the top one, and the next time they took up the girder the chain broke, and the bar came down and hit my foot, and came up and hit me in the face." Upon his cross-examination he testified as follows:

"My instructions were to see that this shoe did not catch. If I had placed the crowbar one end on that shoe, and the other end on the girder, in the proper position, and held it, the shoe would not have caught, and the girder would have slid off all right. That was what I intended to do. The other men were coming along with crowbars, and jollying it off. To have the crowbars perform that duty, the two ends would have to be solid."

But instead of having both ends solid, as he said it was necessary to do, in another part of his testimony he says that:

"One end of the girder rested upon the shoe. It was simply caught. The other end of the crowbar was in my hand, about two feet up. It was necessary to hold it in that position, so it would not jar it all over."

The inference of negligence to be drawn from this is corroborated by the testimony of two witnesses upon the part of the defendant, one of whom was the defendant's superintendent in the construction of the bridge. On the evening of the accident, he saw the plaintiff, when the following conversation took place:

" 'Tom, how did you get caught?' He says: 'I put my bar under the girder. I was careless, and got it too far. The girder hadn't moved for some time, and I was looking at the men at the other end, and was not paying attention to my business, when it went.' "

Another witness who was present at the interview between the plaintiff and the superintendent says:

"I saw the plaintiff that night after he came back from Champlain, at Mr. Stone's house. I heard him say, in reply to Mr. Merrill [the superintendent] asking him how it happened, that he had been at the bar so long, and the girder hadn't moved, that he supposed he got careless. His end of it had been delayed."

The plaintiff denies having had this conversation. He says these two witnesses were talking about the injury; that his face was too sore to say anything.

"I didn't have any conversation about my injury. I don't think they asked me how it happened, or how I got hurt. I am not positive. I should think I would remember if they had said anything about it. I remember I asked about it, and he said he didn't know. Something gave way. I did not tell what gave way. I don't remember Merrill asking me that night after I got back from Champlain how the accident happened. I am not positive. I did not say to him that the reason I got hurt was that I allowed my crowbar to extend over that resting plate eight or ten inches, when I was not attending to my business. I didn't say anything of the kind. As a matter of fact, my crowbar didn't extend over eight or ten inches. I am as positive about that as anything I have stated. I am also positive that I didn't say to Merrill and Weaver that, if I had been attending to my business, I would not have gotten hurt.".

In face of the positive testimony of the two witnesses, portions of whose evidence I have quoted, and who do not appear to have been shaken upon cross-examination, and against whose credibility there is nothing shown, save the fact that they are employés of the defendant, I do not think that we should accept the statement of the plaintiff that no such conversation took place, when he is not positive as to whether he had any conversation with them about the accident, or how it happened, or how he got hurt, and his statement that he cannot remember any such conversation. But, whichever statement is accepted as the true one, the fact remains the same, that the only evidence in the case upon the question of contributory negligence points rather to its presence than its absence, and, the plaintiff having failed to affirmatively show its absence, he is not entitled to recover; and the judgment should be reversed, and a new trial granted, with costs to abide the event. All concur, except PARKER, P. J., who dissents.